UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas Ray GARDNER, Defendant-
Appellant.

No. 71–1762.

United States Court of Appeals,
Seventh Circuit.

Aug. 2, 1972.

Haig Apoian, Apoian & Ross, East St. Louis, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., Jeffrey F. Arbetman, Asst. U. S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before KILEY and STEVENS, Circuit Judges, and LARAMORE, Senior Judge.[1]

PER CURIAM.

Defendant Gardner appeals his conviction under three counts of knowingly receiving and concealing three stolen mo-

---

1. Senior Judge Don N. Laramore of the United States Court of Claims is sitting by designation.

tor vehicles in interstate commerce.[2] We reverse, because the district court erred in denying Gardner's motion to suppress evidence seized in a warrantless search, and in admitting the evidence at trial so as to infect the trial unconstitutionally and contribute to Gardner's conviction.

On January 20, 1971, police in Sauget, Illinois, received information from a representative of Service Oil Station, lessor of a private garage, that the operator of a nearby gas station had observed something going on in the garage: Nobody seemed to work there during the day. A U–Haul was coming and going during all hours of the day and night. Once a car was seen going into the garage but never came out. The lower level garage windows were painted over.

The police responded that day, by climbing a ladder to an upper level window and peering inside where they saw dismantled new automobile bodies, a motor hanging on a hoist, a number of tools and three cutting torches. The lessor requested an investigation and the police learned that the address given by the lessee to the lessor was actually an empty lot.[3]

The next day, the gas station operator notified the police that the U-Haul had again entered the garage. The police went to the garage. The door was locked. The police identified themselves and asked for admittance. No response. Making sure neither the U-Haul nor any person had left the garage, the police went to a broken window pane and inside saw the U-Haul backed up to a chain hoist from which an engine hung. They again sought admittance and tried without success to have the persons come out of the garage. The police threatened to use tear gas if the occupants did not

emerge. Some person inside then handed keys out of the window to the police and "invited" the police to enter. The occupants were told by the police to come out through the overhead door.

The overhead door was opened from inside, and Gardner and another person emerged. They were arrested and informed of their rights and the police "immediately" entered the garage "to investigate." Inside, the police found three vehicle identification numbers (VINs) on three cars which state police later identified as stolen. This evidence was admitted at the trial.

■ We hold that the warrantless search conducted by the police after the arrest of Gardner was unreasonable in violation of Gardner's Fourth Amendment right; that the admission of the fruits of the unlawful search (three VINs) at his trial unconstitutionally tainted his conviction; and that reversal of the conviction is compelled.

Gardner's consent to the search cannot be gleaned from the testimony. Neither the keys nor the invitation to enter were given the police voluntarily. On the contrary, the threat of the tear gas produced both. "Where there is coercion there cannot be consent." Bumper v. North Carolina, 391 U.S. 543, 550, 88 S. Ct. 1788, 1792, 20 L.Ed.2d 797 (1968).

Furthermore, assuming but not deciding, that the warrantless arrest of Gardner after he emerged from the garage was lawful, the search inside the garage cannot be justified as incidental to the arrest. There is no showing here, as required by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), that the evidence seized was within the area of Gardner's "immediate control" (*i. e.*, the area from within which Gardner might have gained possession of a weapon or destructible evi-

---

**2.** 18 U.S.C. § 2313. Sale or receipt of stolen vehicles

Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes inter-

state or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

**3.** The lessee, however, was not delinquent in his rent.

dence). And we think that since the arrest took place *outside* of the garage, the subsequent complete search *inside* the garage clearly cannot be upheld in view of Vale v. Louisiana, 399 U.S. 30, 33–34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

 We are not persuaded by the government's arguments to validate the search. There is no testimony, despite a leading question, that the police entered to check the garage for dangerous persons. And when they "discovered" the vehicle numbers they were not where they had a right to be, nor had they done so inadvertently. Dombrowski v. Cady, 471 F.2d 280 (7th Cir., 1972). They did not know the three automobiles in "plain view" were stolen until the numbers unlawfully seized were checked by state police. And the fact that three partly disassembled automobiles were in "plain view" from the outside of the garage provided probable cause for a search warrant, but not an excuse for a warrantless entry into the building.

Reversed.